1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

CALIFORNIA SPORTFISHING PROTECTION
ALLIANCE, a non-profit corporation,

No.: 2:12-cv-00222-KJM-DAD

12

Plaintiff,

13

v.

CONSENT DECREE

14
15

PICK AND PULL AUTO DISMANTLING, INC.,
*et al.*

16

Defendants.

17
18
19
20
21
22
23
24
25
26
27
28

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and Defendants Pick-n-Pull Auto Dismantlers, a California general partnership, Pick and Pull Auto Dismantling, Inc., and Norprop, Inc. (collectively "Defendants" or "PNP"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Sacramento River, the American River, and the Sacramento-San Joaquin River Delta;

**WHEREAS**, Plaintiff alleges that Pick and Pull Auto Dismantling, Inc., Schnitzer Steel Industries, Inc., Auto Parts Group, Norprop Inc., and Pick-n-Pull Auto Dismantlers are each an owner and/or operator of the automobile dismantling and used auto parts facility located at 3419 Sunrise Boulevard in Rancho Cordova, California (hereinafter the "PNP Facility" "or "Facility");

**WHEREAS**, Defendants aver that Pick-n-Pull Auto Dismantlers is the owner and operator of the PNP Facility, and is responsible for compliance with the requirements of the Clean Water Act;

**WHEREAS**, Defendants' operations involve the de-pollution and recycling of end-of-life vehicles, thus contributing to protection of the environment and conservation of natural resources;

**WHEREAS**, storm water at the PNP Facility discharges into storm drains, and then into the municipal separate storm sewer system operated by the County of Sacramento (hereafter the "Sacramento County MS4");

**WHEREAS**, Plaintiff contends that the operations at the PNP Facility result in discharges of pollutants into storm drains, Morrison Creek, the Stone Lake National Wildlife Refuge and ultimately to the Sacramento-San Joaquin Delta;

**WHEREAS**, Defendants contend that storm water from the Facility flows to a nearby detention basin that is part of the Sacramento County MS4, where it combines with other sources of storm water. When the detention capacity of the basin is exceeded, water flows out of the basin and through a series of channels and culverts, which discharge to Morrison Creek;

**WHEREAS,** discharges from the PNP Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). Defendants are participants in the California Auto Dismantlers Group Monitoring Program under the Storm Water Permit;

**WHEREAS**, on November 22, 2011, Plaintiff served Pick-n-Pull Auto Dismantlers, Pick and Pull Auto Dismantling, Inc. and Schnitzer Steel Industries, Inc., the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The Notice Letter alleged violations of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and violations of the Storm Water Permit;

**WHEREAS**, on December 22, 2011, PNP submitted a detailed response to the Notice Letter to Plaintiff, setting forth defenses to many of the alleged violations and describing the steps it had undertaken to correct other alleged violations. Among other things, PNP's response described the structural and non-structural Best Management Practices ("BMPs") employed by the Facility as part of its Storm Water Pollution Prevention Plan ("SWPPP") to reduce or prevent pollutants in storm water discharges;

**WHEREAS**, on January 27, 2012, Plaintiff filed a complaint against Pick and Pull Auto Dismantling, Inc. and Schnitzer Steel Industries, Inc., in the United States District Court, Eastern District of California (Case No. 2:12-cv-00222-KJM-DAD) alleging ongoing violations of the CWA (hereinafter "Complaint");

**WHEREAS,** on March 13, 2012, Plaintiff sent Pick-n-Pull Auto Dismantlers, Pick and Pull Auto Dismantling, Inc., Norprop, Inc., and Schnitzer Steel Industries, Inc., the EPA, EPA Region IX, the State Board, and the Regional Board, a supplemental notice of intent to file suit ("Supplemental Notice Letter") under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The

/////

Supplemental Notice Letter alleged the same violations as the Notice Letter and added Norprop, Inc. as an owner and/or operator and described an additional discharge point at the Facility;

**WHEREAS**, on May 15, 2012, Plaintiff filed an amended complaint against Pick-n-Pull Auto Dismantlers, Pick and Pull Auto Dismantling, Inc., Norprop, Inc., and Schnitzer Steel Industries, Inc., in the United States District Court, Eastern District of California (Case No. 2:12-cv-00222-KJM-DAD) (hereinafter "Amended Complaint");

**WHEREAS**, Pick-n-Pull Auto Dismantlers, Pick and Pull Auto Dismantling, Inc., Norprop, Inc., and Schnitzer Steel Industries, Inc., deny all allegations in the Notice Letter, Supplemental Notice Letter, Complaint, and the Amended Complaint and maintain that their operations are in compliance with the requirements of the CWA and the Storm Water Permit;

**WHEREAS**, Plaintiff and Defendants have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Amended Complaint without further proceedings and without any admission of liability on the part of the Defendants; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Eastern District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the PNP Facility at which the alleged violations took place is located within this District;

3.      The Complaint and the Amended Complaint state claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

4.      Plaintiff has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any pending motion to enforce this Consent Decree.

**I.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

6.      Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

7.      The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the forty-fifth (45th) day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

8.      This Consent Decree will terminate three (3) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding Defendants' compliance with this Consent Decree in which case the Consent Decree will terminate upon final resolution of the dispute.

**II.      COMMITMENTS OF THE SETTLING PARTIES**

**A.      Storm Water Pollution Control Best Management Practices**

9.      In addition to maintaining the current structural and non-structural BMPs described in the Facility's SWPPP, Defendants shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to developing and implementing BMPs that, collectively, are the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT").

/////
/////
/////
/////
/////

10.      The minimum BMPs to be developed and implemented are set forth below.

**a.   Evacuation of Automobile Fluids**

i.       Upon the Effective Date, consistent with current practice, or to the extent they have not already done so, except as set forth in subparagraph 10.a.ii. below, all draining of automobile fluids shall be conducted in the covered Drain Shop.[1]

ii.       If fluid(s) cannot be drained in the Drain Shop, they will be drained in the Initial Vehicle Intake Area.[2]  Defendants shall not remove any automotive fluids from vehicles located in the Initial Vehicle Intake Area except those fluids that can only be evacuated by hand pump. Defendants shall prevent releases of automotive fluids at the Initial Vehicle Intake Area from flowing into drain inlets at the Facility. All evacuated fluids shall be emptied into the existing tanks that are located within the concrete containment vault inside the Drain Shop.

iii.       Prior to October 1, 2012, to the extent they have not already done so, Defendants shall stage spill kits in the vicinity of the Initial Vehicle Intake Area so they are readily available to employees engaged in the evacuation of fluids. The kits shall be labeled in both English and Spanish and shall include absorbent, oil pads, booms and pillows. Defendant shall train employees engaged in the evacuation of fluids on the proper use of the kits.

iv.       In the event the requirements for an Action Plan are triggered during the term of this Consent Decree (see Paragraph 12 below), Defendants shall consider the implementation of additional BMPs for the Initial Vehicle Intake Area, such as paving, cover, or other BMPs. Additional BMPs shall be implemented by the beginning of the next upcoming Wet Season[3] as set forth in Paragraph 12 below.

**b.   Impervious Surfaces**

i.       Cleaning: Prior to October 1, 2012, and no later than October 1 of each successive year during the term of this Consent Decree, Defendants shall steam-clean the Crush Pad[4] area to remove the build up of contaminants. In the event the requirements for an Action Plan are triggered during the term of this Consent Decree (see Paragraph 12 below), Defendants shall steam-clean all other

---

[1] The Drain Shop is identified on the map attached hereto as Exhibit A.
[2] The Initial Vehicle Intake Area is identified in the map attached hereto as Exhibit A.
[3] Defined as October 1 – May 31.

significantly stained impervious ground surfaces at the Facility. While steam-cleaning, Defendants shall block all Outfalls in order to prevent any wash-water from discharging from the Facility.[5]

  ii.  <u>Gravel and Other Non-pervious surfaces</u>: Defendants shall continue to implement their good housekeeping program to inspect the Facility for stained or contaminated gravel; remove and replace such gravel with clean gravel; and dispose of the stained and/or contaminated gravel properly.

  iii.  <u>Patching</u>: After steam cleaning the Crush Pad, Defendants shall patch all cracks in the Crush Pad that are 1/4 inch or wider. In addition, as part of its regularly scheduled paving maintenance activities, Defendants shall repair concrete and other paved surfaces in the production areas of the Facility by patching and/or replacing the surface as needed.

  iv.  <u>Sweeping</u>:  Within fifteen (15) days of the Effective Date, to the extent they have not already done so, Defendants shall develop a plan to implement sweeping of all impervious ground surfaces using a mechanical sweeper according to the following schedule: (1) at least once a week during the Wet Season, (2) at least twenty-four (24) hours prior to any precipitation event where more than 0.1 inches of rain is predicted in Rancho Cordova with a minimum likelihood of occurrence of fifty-percent (50%) by the National Weather Service, and (3) at least once per month during the Dry Season.[6] Defendants shall keep a log of all sweeping done at the Facility.

  **c. Installation of Enhanced Storm Water Treatment Capability**

  i.  <u>Outfall #1</u>: Prior to November 1, 2012, or such later date as the Settling Parties may agree in accordance with Paragraph 15 hereof, Defendants shall re-route all storm water that previously drained from the Facility to Outfall #1 to the retention/settling area that will be constructed in the northwestern area of the Facility in the vicinity of Outfalls #2 and #3 (see subparagraph 10.c.ii. below). After November 1, 2012, except during High Flow Events,[7] all storm water that previously discharged to Outfall #1 shall be discharged through Outfall #3 after undergoing treatment, as described in subparagraph 10.c.iii. During High Flow Events, water may also be discharged via Outfall #2.

/////

---

[4] The Crush Pad is identified in the map attached hereto as Exhibit A.
[5] Outfalls #1, #2, #3 and #6 are identified on the map attached hereto as Exhibit A.

[6] Defined as June 1 – September 30.
[7] For purposes of this Consent Decree, a "High Flow Event" shall be defined as a 10-year/24-hour or greater storm event.

1  Defendants shall remove or permanently block the piping leading to Outfall #1 so as to prevent any

2  possible discharge of storm water from the Facility to Outfall #1 after November 1, 2012.

3        ii.    <u>Outfall #2</u>:  Prior to November 1, 2012, or such later date as the Settling Parties

4  may agree in accordance with Paragraph 15 hereof, Defendants shall raise the elevation of the drain inlet

5  that collects run-off from the northern portion of the customer yard, and shall construct sufficient

6  additional storm water retention capacity in the vicinity of the drain inlet so that discharges will no

7  longer occur from Outfall #2 except under a High Flow Event. The retention capacity of this area shall

8  be a minimum of 33,000 cu. ft. (246,000 gallons) of water and shall consist of a vegetated swale, a bio-

9  drain (trench) and catch basin, each of which contributes to sediment removal prior to introduction of

10  the water to the existing storm water treatment system at Outfall #3. The purpose of the improvements at

11  Outfall #2 is to eliminate discharges at this location except under High Flow Events. The purpose of the

12  retention/settling area is not to reduce the overall volume of storm water discharged from the Facility,

13  but to improve the quality of the water by enhancing sediment removal prior to introduction of the water

14  to the engineered treatment system at Outfall #3.

15        iii.    <u>Outfall #3</u>:  Defendants shall continue to operate and maintain the existing

16  StormwateRx Clara or comparable treatment unit throughout the term of this Consent Decree. In the

17  event the requirements for an Action Plan are triggered by sampling results obtained during the 2012-

18  2013 Wet Season (see Paragraph 12 below), Defendants, prior to October 1, 2013, shall install

19  additional treatment capacity at Outfall #3. If the requirements for an Action Plan are triggered by

20  sampling results obtained during a subsequent Wet Season, the treatment capacity shall be installed by

21  October 1, 2014 or October 1, 2015, as appropriate. The additional treatment system shall provide final

22  filtration and polishing of the storm water and shall consist of a series of sand filters, carbon filters

23  and/or metal-absorbing media, as necessary, with a minimum rated flow-through capacity of 300 gallons

24  per minute (gpm), downstream of the existing StormwateRx Clara 90 unit.

25        **d.**  **<u>Customer Access and Use of the PNP Facility:</u>**

26        i.    <u>On-site Automobile Repair</u>: Within forty-five (45) days of the Effective Date, to

27  the extent they have not already done so, Defendants shall post signage in the customer parking lot in

28  English and Spanish, and implement other BMPs as necessary, prohibiting customers and other

1   individuals from using any portion of the parking lot at 3419 Sunrise Boulevard for any automobile

2   repair or dismantling activities.

3           ii.         Within forty-five (45) days of the Effective Date, to the extent they have not

4   already done so, Defendants shall post signage in English and Spanish in the customer yard directing

5   customers to close hoods of vehicles after they have finished part(s) removal.

6           iii.        In accordance with the Facility's existing BMP, Defendants shall close vehicle

7   hoods in the customer yard as follows: during the Wet Season, Defendants shall require Facility

8   employees to close vehicle hoods at least one (1) hour prior to the start of forecast precipitation with a

9   likelihood of occurrence of sixty-percent (60%) or greater; during the dry season, Defendants shall

10  require Facility employees to close vehicle hoods as part of regularly scheduled cleaning activities, or at

11  least once during each business day, if possible, provided, however, that under no circumstance shall

12  Defendants be determined to be in breach of this Consent Decree solely on the grounds that open vehicle

13  hoods were observed in the customer yard.

14          **e.   Facility-Wide BMPs**

15          i.          No later than October 1, 2012 Defendants shall ensure that storm water is

16  discharged only from Outfalls #2 or #3, as described in Paragraph 10.c. above.

17          ii.         Consistent with the Facility's current practices, Defendants shall inspect the

18  perimeter of the Facility prior to October 1, 2012 and repair the fencing as needed to prevent water from

19  discharging from the Facility perimeter.

20          iii.        Prior to October 1, 2012 Defendants shall implement permanent structural

21  changes at the Facility to ensure that no water discharges from the Facility to Outfall #6.

22          iv.         Consistent with the Facility's current practice, Defendants shall require

23  employees to report any vehicle that has not been drained of fluid(s) before being placed in the customer

24  use area.

25          v.          Within forty-five (45) days of the Effective Date, Defendants shall post signage in

26  English and Spanish in the Crush Pad area of the Facility stating that no vehicle shall be crushed unless

27  the fluids have been evacuated and/or drained from it. This requirement shall not be interpreted to

28  require the removal, prior to crushing, of vehicle engines, transmissions or other parts that contained

fluids during the operating life of the vehicle, so long as the vehicles have been drained following Defendants' operational protocols and the terms of this Consent Decree. The Settling Parties acknowledge that it is impossible to remove one-hundred-percent (100%) of all automotive fluids from a vehicle and that small amounts of residual fluid may remain. Consistent with the Facility's existing BMPs, Defendants shall implement BMPs at the Crush Pad to ensure that any residual fluids released during the crushing process are cleaned up and not allowed to flow into drain inlets at the Facility. These BMPs shall be implemented in addition to the Facility's drain inlet protection BMPs.

**f.   Storm Water System**

i.      Within sixty (60) days of the Effective Date, Defendants shall have completed a complete mapping and inventory of the Facility's storm water conveyance system ("Storm Water Conveyance System"), including but not limited to identifying all storm water pipes, drop inlets, above ground drainage flows and patterns, the capacity of the jenson boxes, and the storm water treatment measures identified in subparagraph 10.c. The map shall be based on information currently known to Defendants, without need for excavation to identify the existence or capacity of component parts.

ii.      Prior to October 1, 2012, and by October 1 of each successive year during the term of this Consent Decree, Defendants shall hydrojet (clean) the lines in the Storm Water Conveyance System and shall collect and dispose of the contents off-site. In addition, consistent with the Facility's current practices, Defendants shall clean each of the storm water sumps (interceptors) three (3) times over the course of each Wet Season and dispose of the contents off-site.

iii.      Prior to the beginning of every Wet Season and once during each Wet Season while this Consent Decree is in effect, Defendants shall inspect the Facility's Storm Water Conveyance System and related treatment BMPs including those identified in subparagraph 10.c. and remove from them any debris or other materials not related to the control and treatment of storm water (e.g., wood, metal, concrete and other debris).

/////

/////

/////

/////

**B.      Reduction of Pollutants in Discharges**

11.      <u>Contaminant Reduction</u>. Defendants shall develop and implement BMPs with the goal of reducing pollutants in storm water discharges to levels below those in Table 1.[8]  The presence of any contaminant in any discharge from the PNP Facility in excess of the numeric values in Table 1 shall not be considered a breach of this Consent Decree provided Defendants have implemented BMPs that achieve BAT/BCT, including, but not limited, to those identified in the Facility's SWPPP and in this Consent Decree. In the event that the State Board adopts final numeric values in the Storm Water Permit when it is renewed, the numeric values in the renewed Storm Water Permit shall supersede those set forth in Table 1, without need for application to, or approval by, the Court, unless those numeric values are being challenged.

**Table 1. Numeric Values for PNP Facility Discharges**

| Contaminant | Value | Source of Value |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |
| Total Recoverable Copper | **0.0156 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Lead | **0.095 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Zinc | **0.130 mg/** | 2008 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2008 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2008 EPA Benchmark |
| Total Cadmium | **0.0023 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Iron | 1.0 mg/L | 2008 EPA Benchmark |
| Total Recoverable Mercury | 0.0014 mg/L | 2008 EPA Benchmark |
| Biochemical Oxygen Demand | **30 mg/L** | 2008 EPA Benchmark |
| pH | 6.5-8.5 units | Basin Plan |

12.      <u>Action Plan for Table 1 Exceedances</u>. If the result(s) from any sampling event(s) conducted during a Wet Season reveals any contaminant at a concentration above the numeric values specified in Table 1, Defendants shall submit a plan to Plaintiff for reducing the level of contaminant to Table 1 levels ("Action Plan"). An Action Plan shall be submitted by June 1 following the Wet Season during which the numeric value exceedance(s) occurs. Defendants shall only submit one Action Plan per Wet Season, if at all, for a maximum of three (3) Action Plans during the term of this Consent Decree.

---

[8] Several of the values in the table are hardness dependent, as indicated in boldface type. Values based on 2008 EPA Benchmarks assume hardness of 101 mg/l $CaCO_3$. Defendants may, pursuant to applicable

13.     Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including treating storm water prior to discharge from the Facility, that will reduce pollutant concentrations; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible but at least by the beginning of the upcoming Wet Season (i.e., by October 1) unless the Settling Parties agree on a later date based on the time needed to design, procure, and install the necessary equipment. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

14.     Action Plan Review. CSPA shall have thirty (30) days upon receipt of Defendants' Action Plan to provide Defendants with comments on the Action Plan. Within fifteen (15) days of Defendants' receipt of CSPA's comments on the Action Plan, Defendants shall consider CSPA's comments and shall either incorporate them into the Action Plan or, if Defendants decline to accept one or more of CSPA's comments, provide CSPA with a written explanation of the grounds for rejection. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

15.     Defendants shall contact Plaintiff to request an extension of any deadline set forth in this Consent Decree, if necessary, to implement any structural BMPs requiring agency approval. Plaintiff's consent to Defendants' requested extension shall not be unreasonably withheld.

16.     Defendants shall revise their SWPPP and Monitoring & Reporting Plan ("M&RP") as applicable within thirty (30) days to reflect the changes required by an Action Plan. Defendants shall notify CSPA in writing when the Action Plan has been completely implemented.

---

law, adjust the levels specified in Table 1 using the methods specified in Appendix J of the 2008 EPA Multi-Sector General Permit and/or the California Toxics Rule.

## C.      Storm Water Sampling

17.      <u>Sampling</u>. During the life of this Consent Decree, Defendants shall collect storm water samples from each location storm water is discharged from the Facility from at least four (4) qualifying rain events per Wet Season. During, and to the extent necessary following, rain events, Defendants shall continuously discharge all water that has accumulated in the retention/settling area until the volume of water is drawn down. To the extent water is stored or contained in the retention/settling area, Defendants shall sample the stored or contained water at the time it is released, as required by Section 5(a) of the Storm Water Permit. All sampling shall be conducted as described in subparagraphs a. through i.

a.      A qualifying rain event is one where: (1) a discharge occurs during operating hours, and (2) there was no storm water discharge for three days.

b.      If, prior to March 1, Defendants have been unable to collect samples from two (2) qualifying storm events, Defendants shall satisfy the sampling requirements of this Consent Decree by sampling non-qualifying storm events.

c.      Defendants agree to collect storm water samples from other discharge point(s) at the Facility that are created due to a change in operation or other circumstances, or are otherwise required to be sampled by the Storm Water Permit or this Consent Decree. Defendants shall not be required to sample discharges from Outfall #6 as long as BMPs are implemented and maintained to prevent any discharge from the PNP Facility to Outfall #6.

d.      Defendants shall analyze each storm water sample for the contaminants set forth in Table 1.

e.      A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

f.      The laboratory shall use analytical methods adequate to detect the individual contaminants at or below the values specified in Table 1.

g.      All samples collected from the Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded.

h.      Defendants shall request that sample-analysis results be reported to it within ten (10) business days of laboratory receipt of the sample.

i.     Defendants shall provide CSPA with the lab results, including a copy of the complete laboratory report of all samples collected at the Facility, within five (5) business days of receiving the results.

**D.     Visual Observations**

18.     All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree. During the life of this Consent Decree, Defendants shall conduct visual observations at each point where storm water is discharged from the Facility, at least once per month, and shall maintain logs of the visual observations. During a rain event occurring in the 2012-2013 Wet Season that produces more than three-quarters of an inch of precipitation over a twenty-four (24) hour period, Defendants shall photograph and/or videotape both of the facility gates located on Fitzgerald Road, and shall make the photographs or videos available to CSPA during an inspection conducted pursuant to Paragraph 26. Defendants shall observe the facility gates on Fitzgerald Road at sufficient intervals during the rain event to ensure data representative of the entire rain event is captured. If no discharges from either gate are observed throughout the rain event, Defendants will no longer have to conduct visual observations at the gates, unless otherwise required under the Storm Water Permit.

**E.     Employee Training**

19.     Within sixty (60) days of the Effective Date, Defendants shall conduct additional employee training in order to familiarize employees at the Facility as appropriate with the requirements of the Storm Water Permit and this Consent Decree. The training program shall include use of written training materials needed for effective implementation of the training program. Defendants shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

20.     The training program shall require at least the following:

a.     Non-Storm Water Discharge Training. The Defendants shall train employees, as appropriate to their particular job descriptions, on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper draining of automobile fluids, and how to detect and prevent them;

b.   <u>BMP Training</u>. The Defendants shall train employees, as appropriate to their particular job descriptions, on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility;

c.   <u>Sampling Training</u>. The Defendants shall designate an adequate number of employees to ensure the collection of storm water samples from each discharge location as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

d.   <u>Visual Observation Training</u>. The Defendants shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree and/or the Storm Water Permit.

21.   Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Defendants who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP and M&RP, as appropriate to the particular employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within thirty (30) days after being hired or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree.

22.   The Defendants shall maintain training records to document compliance with Section II.E of this Consent Decree, and shall make these records available for Plaintiff's review at the Facility. The Training Program shall be specified in the SWPPP and Defendants shall modify the SWPPP as necessary to reflect the training program required by this Consent Decree.

/////

/////

/////

**F.      Storm Water Pollution Prevention and Monitoring and Reporting Plans**

23.      Within sixty (60) days after the Effective Date of this Consent Decree, Defendants shall revise their SWPPP and their M&RP to:

a.      Incorporate the requirements of the Storm Water Permit and this Consent Decree;

b.      Identify the individuals responsible for compliance with the Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (e.g., John Doe, collecting samples);

c.      Create a visual inspection checklist that must be used by trained Facility personnel when conducting the visual observations and monitoring of storm water required under the Storm Water Permit and/or under this Consent Decree.

24.      Commenting on the SWPPP and M&RP Revisions. Defendants shall submit the revised SWPPP and M&RP to CSPA for review and comment as soon as it is completed but in any event no later than sixty (60) days after the Effective Date. CSPA shall provide comments, if any, to Defendants within thirty (30) days of receipt of the SWPPP and M&RP. Within thirty (30) days after receipt of comments from CSPA, Defendants shall incorporate CSPA's comments into the SWPPP and M&RP or shall justify in writing why any comment is not incorporated. Any disputes over the adequacy of the revised SWPPP and M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

25.      Additional Revisions to SWPPP and M&RP. Defendants shall revise the SWPPP and M&RP if there are any changes in the Facility's operations that may possibly affect the quality of storm water discharges at the Facility, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan. Defendants shall submit any revised SWPPP and M&RP to CSPA for review and comment within five (5) days of completion. CSPA shall provide comments, if any, to Defendants within thirty (30) days of receipt of any revised SWPPP and M&RP. Within thirty (30) days of receiving comments from CSPA, Defendants shall incorporate CSPA's comments into any revised SWPPP and M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and M&RP shall be

1  resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III

2  below.

3       **G.   Compliance Monitoring and Reporting**

4       26.   <u>Site Inspections</u>. Plaintiff and its representatives may conduct up to two (2) site

5  inspections per year at the PNP Facility during the life of this Consent Decree, and an additional

6  inspection (for a total of three per year) if there is a dispute regarding compliance with the terms of this

7  Consent Decree. The site inspections shall occur during normal business hours, Monday through Friday.

8  Plaintiff shall provide Defendants with five (5) days notice of an intended Wet Weather inspection, will

9  continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four

10 (24) hours prior to the start of the inspection; Plaintiff shall provide at least forty-eight (48) hours notice

11 prior to a dry season inspection. During inspections, Plaintiff's representatives must wear safety goggles,

12 hard hats, vests, and appropriate clothing and footwear and remain in the presence of PNP

13 representatives at all times. Defendants shall be entitled to prevent Plaintiff's representatives from

14 entering any portion of the Facility or from engaging in any action that Defendants, in their sole

15 discretion, deem unsafe. Any disputes regarding the conduct of an inspection shall be resolved pursuant

16 to the dispute resolution provisions of this Consent Decree, set out in Section III below. In addition, if

17 Plaintiff discloses any information to the public that was collected during the inspection, including

18 observations, notes, analytical data or other information, all such information shall be shared with

19 Defendants at the same time it is made available to the public, or soon thereafter as reasonably

20 practicable.

21      27.   During the site inspection, Plaintiff and/or its representatives shall be allowed access to

22 the PNP Facility's SWPPP, M&RP, and other monitoring records, reports, and sampling data for the

23 Facility. In addition, during the site inspection, Plaintiff and/or its representatives may collect samples of

24 discharges from the Facility. Any samples collected by Plaintiff shall be submitted to a certified

25 California laboratory for analysis in accordance with the provisions of Paragraph 17 of this Consent

26 Decree. Copies of the complete laboratory reports shall be provided to Defendants within five (5)

27 business days of receipt. At the request of Defendants, Plaintiff shall, if sufficient flow is available,

28 provide Defendants with split samples of any samples collected by Plaintiff, provided that nothing

herein shall require Defendants to submit such samples for analysis. If Defendants request split samples, they shall provide the necessary sample container(s) to Plaintiff for this purpose. If Defendants elect to analyze the split samples, the analyses shall be conducted in accordance with the requirements of Paragraph 17, and a copy of the final laboratory report shall be provided to Plaintiff with five (5) business days of receipt of the results. Plaintiff shall bear all costs of inspection, sampling and analysis using funds provided by Defendants pursuant to Paragraph 28.

28.     <u>Compliance Monitoring and Oversight</u>. Defendants shall pay Plaintiff the sum of Five Thousand Dollars ($5,000.00) per year (totaling $15,000.00) during the term of the Consent Decree to help defray Plaintiff's costs of monitoring and overseeing Defendants' compliance with this Consent Decree. Payment of Five Thousand Dollars ($5,000.00) shall be made within ten (10) days after the Effective Date, and Five Thousand Dollars ($5,000.00) on each anniversary of the Effective Date, beginning in 2013. Defendants' check shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and shall be delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129. Upon request, Plaintiff shall provide Defendants with documentation of the fees and costs incurred in connection with compliance monitoring and oversight activities. Any unexpended compliance monitoring funds remaining at the termination of this Consent Decree shall be refunded to Defendants within ten (10) business days after the date of termination.

29.     <u>Action Plan Payments</u>. If Defendants are required to submit an Action Plan to CSPA in accordance with Paragraph 12, Defendants shall make Action Plan payments payable to: "Lawyers for Clean Water Attorney Client Trust Account" and shall deliver such payments by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129 at the time the Action Plan is submitted to CSPA. The Action Plan payments shall be made as follows:

a.     Limited Action Plan Payment. In circumstances where there are no more than two (2) contaminants exceeding Table 1 numeric values in a single rain event in a Wet Season, and sampling was conducted as required by this Consent Decree, Defendants shall make an additional compliance monitoring payment in the amount of Five Hundred Dollars ($500.00) upon submission of the Action

Plan. For example, if copper and zinc were the only parameters exceeded for the entire Wet Season and were exceeded only once, then payment under this subsection will be made. If zinc and copper were each exceeded at Outfall #3 in one sample event, and zinc was exceeded at Outfall #3 during a second sample event, or any parameter was exceed at another Outfall, payment will be made under subsection b. below.

   b. Regular Action Plan Payment. In all other circumstances, Defendants shall make an initial additional compliance monitoring payment in the amount of Two Thousand Dollars ($2,000.00) upon submission of the Action Plan. Thereafter, in the event that the initial payment is insufficient to cover the cost of CSPA's review of the Action Plan, Defendants agree to reimburse CSPA its additional costs, up to a maximum of Two Thousand Dollars ($2,000.00), for a total Action Plan payment of Four Thousand Dollars ($4,000) for any single Action Plan. Plaintiff shall submit an invoice to Defendants documenting its additional costs, which shall be paid within thirty (30) days of receipt in accordance with the provisions of this paragraph.

   30. <u>Reporting and Document Provision</u>. During the life of this Consent Decree, Defendants shall copy Plaintiff on all documents related to water quality at the PNP Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiff concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Defendants' compliance with the Storm Water Permit or storm water quality received by Defendants from any regulatory agency, State or local agency, county or municipality shall be provided to CSPA within five (5) calendar days of receipt by Defendants.

  **H. Environmental Project, Litigation Fees and Costs, and Stipulated Penalties**

   31. <u>Environmental Mitigation Project</u>. To remediate alleged environmental harms as alleged in the Amended Complaint, Defendants shall pay Fifty Thousand Dollars ($50,000.00) to be used to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed, with specific emphasis on Morrison Creek and the Stone Lake National Wildlife Refuge ("the Mitigation Payment"). The Mitigation Payment shall be paid to the Rose Foundation for Communities and the Environment, 6008 College Avenue, Suite 10, Oakland, California 94618 attention Tim Little. The Mitigation Payment shall be made within sixty (60) Days of the Effective Date of this

1   Consent Decree, and Defendants shall concurrently provide Plaintiff with a copy of such payment.

2   Plaintiff shall coordinate with the Rose Foundation to provide DOJ with the information set out in

3   Paragraph 5 of the Notification on Receipt of a Clean Air Act or Clean Water Act Citizen Suit

4   Complaint ("Notification") (DOJ, Environment and Natural Resources Division, February 2012),

5   attached hereto as Exhibit B. Plaintiff shall inform the Rose Foundation that it is required to copy

6   Defendants on any reporting to DOJ regarding the disbursement of the Mitigation Payment. No portion

7   of the Mitigation Payment may be made to Plaintiff.

8           32.     CSPA's Fees and Costs. Defendants agree to reimburse CSPA for its investigation fees

9   and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a

10  result of investigating and preparing the lawsuit, and negotiating a resolution of this matter, in an

11  amount totaling One Hundred and Fifteen Thousand Dollars ($115,000.00), which amount shall be paid

12  in full for Lawyers for Clean Water's fees and costs, and any experts that were retained in connection

13  with this matter. Such payment shall be made within thirty (30) days of the Effective Date, payable to:

14  "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight

15  delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

16          33.     Stipulated Payment. The Defendants shall make a stipulated payment of Seven Hundred

17  and Fifty Dollars ($750.00) for each missed deadline included in this Consent Decree. Payments for a

18  missed deadline shall be made to fund environmental project activities that will benefit the Sacramento-

19  San Joaquin River Delta and its watershed and shall be made to the Rose Foundation for Communities

20  and the Environment, and mailed via certified mail or overnight delivery to 6008 College Avenue Suite

21  10, Oakland, California 94618 attention Tim Little. The Defendants agree to make the stipulated

22  payment within thirty (30) days of a missed deadline. Defendants shall provide Plaintiff with a copy of

23  each such payment at the time it is made.

24          34.     Interest Payments. In the event of late payment of any of the sums due under this Consent

25  Decree, the Defendants shall pay five percent (5%) APR interest to Plaintiff, which shall accrue from the

26  first day past the date the sum was due until the date the Defendants tender payment. All such payments

27  shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by

28  /////

certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

## III.   DISPUTE RESOLUTION

35.     This Court shall retain jurisdiction over this matter for a period of three (3) years from the date of entry of the Consent Decree for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

36.     Meet and Confer. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of twenty (20) calendar days from the date of the notice.

37.     If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Eastern District of California. The Settling Parties agree not to object to an expedited hearing schedule on the motion if one of the Settling Parties requests one.

38.     Burden of Proof. In the event of any disagreement or dispute between Plaintiff and Defendants over the necessity or appropriateness of implementing any particular BMP or set of BMPs, including in any formal or informal proceeding brought to enforce the terms of this Consent Decree, Defendants shall bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the Facility, or that they are in compliance with the terms of this Consent Decree. Plaintiff shall not be required to prove that Defendants' BMPs do not constitute BAT/BCT.

39.     Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and 1319, and case law interpreting that standard.

## IV.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.    CSPA's Release. Upon the Effective Date of this Consent Decree, CSPA, on its own behalf and on behalf of its current and former officers, directors, employees, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendants and each of their current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives from, and waives all claims which arise from or pertain to this action, including all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, and/or claims that were asserted in CSPA's Notice Letter, Supplemental Notice Letter, Complaint, and Amended Complaint up to the Effective Date.

41.    Defendants' Release. Upon the Effective Date of this Consent Decree, Defendants, on each of their own behalves and on behalf of their current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases CSPA (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to CSPA's Notice Letter, Supplemental Notice Letter, Complaint, and Amended Complaint up to the Effective Date.

42.    Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to storm water discharges from the PNP Facility occurring or arising after the Effective Date of the Consent Decree but specifically excluding the discharges and all other matters addressed by this Consent Decree.

/////

/////

## V.   **MISCELLANEOUS PROVISIONS**

43.      No Admission of Liability. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

44.      Force Majeure. Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance, shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any force majeure event.

45.      Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

46.      Choice of Law. The laws of the United States shall govern this Consent Decree.

47.      Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

/////
/////
/////
/////
/////
/////

48.   <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail or courier as follows:

<u>If to Plaintiff:</u>

Layne Friedrich
  Layne@lawyersforcleanwater.com
Drevet Hunt
  Drev@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

With copies to:

California Sportfishing Protection Alliance
Bill Jennings, Executive Director
  Deltakeep@me.com
3536 Rainier Avenue
Stockton, California 95204

<u>If to Defendants:</u>

Margaret Rosegay
  margaret.rosegay@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
San Francisco, California 94105

With copies to:

Donald Sexton
  dsexton@picknpull.com
Pick and Pull Auto Dismantling, Inc.
10850 Gold Center Drive, Suite 325
Rancho Cordova, California 95670

Notifications of communications shall be deemed submitted the next business day after having been deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Settling Parties may agree to transmit documents electronically or by facsimile.

49.   <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to

comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

50.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

51.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

52.   <u>Dismissal of Schnitzer Steel Industries, Inc</u>. Following entry of this Consent Decree by this Court, Schnitzer Steel Industries shall be dismissed from this litigation with prejudice, and shall not be considered a Settling Party or otherwise bound by the terms of this Consent Decree.

53.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

54.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

55.   <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

56.   The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

57.   The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendants do not admit liability for any purpose as to any allegation or matter arising out of this Action.

1   IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first

2   set forth above.

3                                     ORDER

4   Good cause appearing, the parties having stipulated and agree, and the position of the United

5   States having been recorded in the letter filed on September 17, 2012 (ECF No. 17), **IT IS SO**

6   **ORDERED**.

7   Date:   February 7, 2013.

8                                     _____

9                                     UNITED STATES DISTRICT JUDGE

10

11   APPROVED AS TO FORM

12                                     LAWYERS FOR CLEAN WATER, INC.

13

14   Dated: __July 27,_____2012       By:   /s/Layne Friedrich_____

15                                           Layne Friedrich
                                            Attorney for Plaintiff

16                                     PILLSBURY WINTHROP SHAW PITTMAN LLP

17

18   Dated: __July 30,_____2012       By:   /s/Margaret Rosegay (as authorized on July 30,
                                            2012)
19                                           Margaret Rosegay
                                            Attorney for Defendants
20

21   APPROVED AS TO CONTENT

22   Dated: __27 July_____2012       By:   /s/Bill Jennings (original signature retained by
                                            Plaintiff's counsel)
23                                           Bill Jennings
24                                           California Sportfishing Protection Alliance

25

26   Dated: __July 30,_____2012   By:   /s/Michael Brinkley (original signature
                                            retained by Defendants' counsel)
27                                           Michael Brinkley
28                                           Pick and Pull Auto Dismantling, Inc.

1

2

3   Dated:    July 30,           2012         By:      /s/Michael Brinkley (original signature

4                                                       retained by Defendants' counsel)
                                                        Michael Brinkley

5                                                       Norprop, Inc.

6

7   Dated:    July 30,           2012         By:      /s/Michael Brinkley (original signature

8                                                       retained by Defendants' counsel)
                                                        Michael Brinkley

9                                                       Pick-N-Pull Auto Dismantlers

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

Map of PNP Facility Exhibit A
26



Pick- N- Pull Auto Dismantlers
3445 Sunrise Blvd
Rancho Cordova, CA 95742

**EXHIBIT A**

Map of PNP Facility Exhibit A
27

**Exhibit B**



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-03279

*Law and Policy Section*
*P.O. Box 7415*
*Washington, DC  20044-7415*

Telephone (202) 514-1442
Facsimile (202) 514-4231

**JUL 1 8 2012**

Drevet John Hunt, Esq.
Layne Karen Friedrich, Esq.
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, CA  94129

Margaret Rosegay, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
50 Fremont Street
San Francisco, CA  94105-2228

Re:  California Sportfishing Protection Alliance v. Pick and Pull Auto Dismantling, Inc.
et al., United States District Court for the Eastern District of California (Sacramento)
No. 2:12-CV-222-KJM-DAD

Dear Counsel:

As required by the Clean Water Act ("CWA"), 33 U.S.C. § 1365(c)(3), Plaintiff's counsel sent the Attorney General a copy of the Complaint in the above-captioned citizen suit. Please review the attached document entitled "Notification on Receipt of a Clean Air or Clean Water Act Citizen Suit Complaint," which contains information that we routinely transmit upon receipt of such a complaint.

Note that the P.O. Box and accompanying zip code for all citizen suit-related correspondence has recently changed to:

> Citizen Suit Coordinator
> Environment and Natural Resources Division
> Law and Policy Section
> P.O. Box 7415
> Ben Franklin Station
> Washington, D.C.  20044-7415

Mail sent to the previous address will be forwarded for a limited time, after which it will be returned to sender.  Please update your records accordingly.  Note that the P.O. Box address to

Notification Letter Exhibit B
29

which payments of civil penalty monies should be made has also changed.  (Both new addresses are noted in the attached document.)

The Department of Justice has assigned me to answer questions or otherwise assist the parties in achieving a fair and expeditious resolution of this litigation.  Please feel free to contact me at (202) 307-0930 if you have any questions about citizen enforcement generally or the role of the United States in such cases.

Sincerely,

Kate Bowers, Attorney
United States Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C.  20044-7415

Attachment

- 2 -



**U.S. Department of Justice**

Environment and Natural Resources Division

*Law and Policy Section*
*P.O. Box 7415*
*Ben Franklin Station*
*Washington, DC 20044-7415*

*Telephone (202) 514-1442*
*Facsimile (202) 514-4231*

**Revised February 2012**

## NOTIFICATION ON RECEIPT OF A CLEAN AIR ACT OR CLEAN WATER ACT CITIZEN SUIT COMPLAINT

The Clean Air Act and Clean Water Act provide for service of a copy of a citizen suit complaint on the Administrator of the Environmental Protection Agency (EPA) and on the Attorney General. 42 U.S.C. § 7604(c)(3); 33 U.S.C. § 1365(c)(3); 40 C.F.R. § 135.4. In cases in which the United States is not a party, the United States Department of Justice, Environment and Natural Resources Division, Law and Policy Section receives such materials on behalf of the Attorney General. Upon receipt of a complaint, the Section's longstanding practice is to respond with a standard letter to the parties with basic information on the role of the United States Department of Justice and EPA under the statute in question. To simplify that process, the Section now formats that letter as a shorter cover letter, accompanied by this attachment.

### A. Resources Available for Citizen Suits

Citizen enforcement actions are an integral component of the Acts' overall enforcement schemes. The United States values the contribution that responsibly-pursued citizen suits make to protecting our nation's air and waters. As discussed below, the United States Department of Justice and EPA play an important role in the citizen suit process by reviewing and commenting on proposed consent judgments. The Department also has some expertise in the resolution of certain common legal and practical issues that may arise in drafting consent judgments in citizen suit actions, and we are pleased to consult with counsel or review early drafts of such documents.

The Office of Enforcement and Compliance Assurance of EPA is also available to assist you. EPA has information available to the public that may be of assistance to the parties in this action, such as the BEN computer model for calculating the economic benefits a defendant may have enjoyed as a result of its non-compliance. EPA also has developed a Supplemental Environmental Project (SEP) Policy, which provides guidance in designing environmentally beneficial projects that may be included in a settlement. Many of these resources are available on EPA's Civil Enforcement webpage: http://www.epa.gov/compliance/civil/index.html. For more information regarding EPA resources, please contact Charlie Garlow at (202) 564-1088 regarding the Clean Air Act or Sherry Milan at (202) 564-2619 regarding the Clean Water Act.

Additionally, the United States participates as amicus curiae in some citizen enforcement actions. Please contact the Department's Law & Policy Section if a legal issue arises in this case that you believe may be of interest to the United States.

- 1 -

## B. Review of Consent Judgments

1. *45 Day Review Period.* If the parties choose to resolve a citizen suit rather than proceed with litigation, the statutory citizen suit provisions require that any settlement be entered as a consent judgment and that the United States be given at least 45 days to review any proposed consent judgment before its entry by the Court. The United States typically uses the entirety of its 45-day comment period. At the end of that period, the United States files a letter or pleading with the Court stating whether the United States objects to the proposed consent judgment, and providing any comments on the document.

2. *Instruments Subject to Review.* For purposes of the United States' right of review, the term "consent judgment" has a broad meaning, and encompasses all instruments entered with the consent of the parties that have the effect of resolving any portion of the case. For example, a document stipulating to dismissal of a case or any part thereof would be within the scope of this language. Such documents and any associated instruments (even if not submitted to the Court) must be submitted to the United States for review, notwithstanding any provisions purporting to maintain the confidentiality of such materials. Amendments to previously-entered consent judgments must also be submitted to the United States for review before entry by the Court. The Department monitors citizen suit litigation to review compliance with this requirement. Settlements that do not undergo the statutorily-required review process are at risk of being void.

3. *Compliance and Remedies.* In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a SEP payment sufficient to deter future violations, or combinations of the above. Please note that payments denominated as civil penalties must be paid to the United States Treasury and should be sent to Saundra Doyle at the following address:

> Saundra Doyle
> Debt Collection Specialist
> Environment & Natural Resources Division
> Executive Office
> P.O. Box 7611
> Ben Franklin Station
> Washington, D.C. 20044-7611
> (202) 616-3135

4. *Federal/State Law Claims.* In some instances, a plaintiff will incorporate claims under federal environmental law and state tort law into a single complaint. Note that any resolution of such a complaint should distinguish between the relief attributable to the federal and the state claims. Any recovery of money damages should be attributable only to the state-law claims. Recovery of money damages by plaintiffs is not permitted under the Clean Air Act or Clean Water Act

(although attorney's fees recoveries are permissible in some circumstances).  As a rule, a settlement of this type must specifically provide and identify appropriate relief attributable to the federal-law claims consistent with the objectives of the Clean Air Act or Clean Water Act, and may not exclusively allocate relief to the state-law claims.  Appropriate types of relief for federal citizen suit claims are discussed in the preceding paragraph (B.3).

5.  *SEP Provisions*.  A consent judgment may include payments to third parties to carry out a SEP so long as there is a sufficient nexus between the SEP and the violations contained in the complaint.  SEP monies may not be received or administered by plaintiffs, only by third parties.  If the consent judgment you are submitting includes a SEP, please provide a detailed description of the SEP and the allocation of SEP monies for the particular project.  This will allow the United States to evaluate whether there is a sufficient nexus between the SEP and the alleged violations.  For guidance, you may consult EPA's SEP Policy, available at http://www.epa.gov/compliance/civil/seps/index.html.  When sending the Department a proposed consent judgment that includes a SEP, please also include a letter from any third-party recipient of SEP funding to the Department of Justice, stating that the SEP recipient 1) has read the proposed consent judgment; 2) will spend any monies it receives under the consent judgment for the purposes specified in the consent judgment; 3) is a 501(c)(3) tax-exempt organization; 4) will not use any money it receives under the consent judgment for lobbying purposes; and 5) will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.  We additionally request that your letter include a project description detailing how the funds will be utilized.  We believe this certification by the SEP recipient helps ensure that the SEP advances the purpose of the Clean Water Act or Clean Air Act and serves the public interest.

6.  *Procedures for Lodging Proposed Consent Judgments*.  EPA's Clean Water Act regulations set forth procedures for service of proposed citizen suit consent judgments on the Department of Justice and EPA. 40 C.F.R. § 135.5. The regulations also provide a process for lodging such proposed consent judgments with the Court.  We draw your attention to these requirements.  The regulations state that when a proposed consent judgment is filed or lodged with the Court, "the plaintiff shall notify the court of the statutory requirement that the consent judgment shall not be entered prior to 45 days following receipt by both the Administrator and the Attorney General of a copy of the consent judgment." § 135.5(b)(1). They also provide for the plaintiff to notify the Court of the date on which the Administrator and the Attorney General received copies of the proposed consent judgment, either at the time of lodging or after the proposed consent judgment is lodged. *Id.*

The Department requests that the parties follow a similar approach in Clean Air Act cases.  This will ensure that the Court is notified of the applicable statutory review period and can defer entry of the proposed consent judgment until the government's review is complete.

7.  *Mailing Address for Service on the Department of Justice*.  EPA's Clean Water Act regulations provide for service of a copy of a proposed citizen suit consent judgment on the Attorney General at a specified street address. 40 C.F.R. § 135.5. As a result of new security procedures, mail sent to that address is automatically subjected to special mail handling procedures that may delay its arrival for a month or longer.  **We therefore request until further notice that any proposed consent judgments served on the Department of Justice be sent to the following address:**

Notification Letter Exhibit B
33

Citizen Suit Coordinator
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

The Department will treat this as satisfying the statutory requirement to serve the Attorney General. (The separate procedures appearing in the regulation for service on EPA remain applicable and should also be followed.) If a copy of the consent judgment is sent only to the address listed in the regulations, the Department may not regard the 45-day review period as commencing until the special handling process has been completed. You may also arrange for service of consent judgments by fax or email. Please call the call the main number for the Law & Policy Section at (202) 514-1442 to discuss the process for doing so.

## C. Conclusion

We are pleased at any time to discuss these and other principles related to citizen suit actions. It is our hope that through discussions early in the process of resolving a citizen suit we can provide useful information and help to facilitate the prompt, fair and appropriate disposition of these cases. The United States notes for the record that, notwithstanding such discussions or any other involvement, it is not bound by the resolutions of citizen suit matters. See, e.g., Hathorn v. Lovorn, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); 28 U.S.C. §§ 516, 519.

Notification Letter Exhibit B
34